# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan B. Gottschall | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 99 C 2504 | **DATE** | 5/8/2002 |
| **CASE TITLE** | Roger Whitmore's Automotive Services, Inc., et al. vs. Lake County, Illinois, et al. | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Plaintiffs' motion for leave to amend Counts I-V is granted. Counts I and II are dismissed. Count III is dismissed with respect to defendants Diamond, DePerte, and Kevin's Towing. Count IV is dismissed with respect to DePerte and Kevin's Towing. Count V is dismissed with respect to all defendants except Diamond, DePerte, and Kevin's Towing. Defendants shall answer or otherwise plead within 30 days of the entry of this order.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | number of notices | **Document Number** |
| | No notices required. | | | |
| | Notices mailed by judge's staff. | | MAY 0 9 2002 | 70 |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | docketing deputy initials | |
| | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | | date mailed notice | |
| | courtroom deputy's initials | | mailing deputy initials | |
| | | Date/time received in central Clerk's Office | | |



DOCKETED
MAY 0 9 2002

ROGER WHITMORE'S AUTOMOTIVE
SERVICES, INC., et al.,

     Plaintiffs,

  v.

LAKE COUNTY, ILLINOIS, et al.,

     Defendants.

No. 99 C 2504

Judge Joan B. Gottschall

## MEMORANDUM OPINION AND ORDER

In an order of March 27, 2001, this court dismissed five counts of plaintiffs' amended complaint. Plaintiffs seek leave to replead these counts. The court made clear that defendants would not be required to respond until this court reviewed the proposed amendment for compliance with the prior order. For the reasons that follow, the amendment is allowed, Counts I and II are dismissed, Count III is dismissed with respect to Diamond, DePerte, and Kevin's Towing, Count IV is dismissed with respect to DePerte and Kevin's Towing, Count V is dismissed with respect to all defendants except Diamond, DePerte, and Kevin's Towing, and defendants are ordered to answer or otherwise plead within 30 days of the entry of this order.

## I. Background

The following facts are taken from plaintiffs' first amended complaint and second amended Counts I-V and are assumed to be true for present purposes. Vehicles that are abandoned, involved in accidents, or otherwise unable to move need to be towed (called "TBT" vehicles). The Lake County Sheriff's Department (the "Department") dispatches towing companies according to the following protocol. If the vehicle operator requests a specific towing

company, an officer will have a dispatcher call the specific company selected by the vehicle operator. If the vehicle operator does not request a specific towing company, then the dispatcher calls upon "the towing company in whose Sheriff approved 'territory' that TBT vehicle is located, and requests a tow from that company." (Am. Counts ¶ 6.)

Roger Whitmore, who is president of Roger Whitmore's Automotive Service, Inc. ("Whitmore's Auto"), operates a tow service and was listed on the "Towing List" from which the sheriff calls towing operators for TBT vehicles. Whitmore's Auto was also allocated a certain piece of territory in Lake County. If a TBT vehicle was located in this territory and the vehicle's driver had not requested a specific towing company, Whitmore's Auto was given the business of towing the vehicle. Whitmore and Whitmore's Auto are the plaintiffs in this case. Many of the defendants are competing towing operators (and their companies), who also received business in this way: Max Johnson, CEO of Auto Center of Beach Park, Inc. ("Auto Center"); Wally Herman, CEO of Wildwood Service, Inc. ("Wildwood"); Kevin DePerte, CEO of Kevin's Towing, Inc. ("Kevin's Towing"); and Edward Kohlmeyer, CEO of A-Tire, Inc. ("A-Tire").

Gary Del Re is the sheriff of Lake County. He won both the primary and general elections for county sheriff in 1998. The primary election occurred in April 1998, and the general election occurred in November 1998. Plaintiffs allege that during Del Re's election campaigns, Del Re received bribes in the form of campaign contributions from at least two towing operators, Johnson and DePerte, in exchange for increases in their towing territories. Plaintiffs allege that following the Johnson transaction, Del Re directed the mailing of letters to towing operators in April 1999 purporting to "slightly modify" their towing territories in order to "maintain organizational efficiency." (Am. Counts ¶ 37.) In addition, plaintiffs allege that Del

2

Re, Gary Stryker (the undersheriff), Johnson, Herman, and Kohlmeyer visited towing operators in order to pressure them into giving campaign contributions. Plaintiffs allege that Del Re threatened them with reduced business if they did not give money to his campaign. Plaintiffs also claim that Del Re's campaign sent mailings in which Del Re invited towing operators to purchase fundraising tickets. Plaintiffs allege that these mailings were sent to raise money and again pressure towing operators into making contributions out of fear of retribution. They further allege that Del Re used some of his fund-raisers, Thomas Crichton, Jack Alan Diamond, and Nick Gountanis, to help solicit and negotiate the sale of towing territories, usually over the telephone, in exchange for campaign contributions.

After the election of Del Re as county sheriff, plaintiffs allegedly lost 50% of Whitmore's Auto's towing territory and 75% of its towing business to Johnson and Herman in the April 1999 modification. Whitmore also claims that he was damaged personally by being intimidated into contributing $250 to Del Re's campaign on January 28, 1998. Plaintiffs trace their losses to the defendants' alleged pattern of racketeering and conspiracy.

## II. Analysis

Counts I-IV of plaintiffs' first amended complaint alleged violations of the Racketeering Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1962(a)-(d). The court dismissed the RICO counts for failure to comply with Fed. R. Civ. P. 8, instructing plaintiffs that if they chose to replead, they would be required to provide, at a minimum, the following information with respect to each count:

> (1) who the plaintiff[s] and the defendant[s] are; (2) the elements of that RICO claim together with the factual allegations relied on to make out each element (and in the case of allegations of fraud,

3

> facts pled with particularity); (3) what plaintiffs rely on to show the
> requisite connection between the alleged RICO violation and the
> injury plaintiffs suffered; and (4) the specific predicate acts
> underlying the RICO activity and their dates of occurrence.

*Roger Whitmore's Auto. Servs. v. Lake County*, No. 99 C 2504, 2001 U.S. Dist. LEXIS 11104, at

*7-8 (N.D. Ill. Mar. 27, 2001). Count V of the first amended complaint alleged a common law

conspiracy to commit fraud, but failed to plead the elements of fraud with particularity and was

therefore dismissed. *Id.* at *9-10. Plaintiffs have attempted to replead Counts I-V. The purpose

of this opinion is to evaluate plaintiffs' compliance with the court's dismissal order, which

requires a preliminary determination as to the sufficiency of amended Counts I-V. Defendants

will be required to respond only to those counts that clear this threshold hurdle.

A. Count III: Section 1962(c)

For ease of exposition, the court will begin with the third count. The amended Count III

specifies that Whitmore and Whitmore's Auto are the plaintiffs and Del Re, Stryker, Crichton,

Diamond, Johnson, Auto Center, Herman, Wildwood, DePerte, Kevin's Towing, Kohlmeyer, and

A-Tire are the defendants. By identifying the relevant parties, plaintiffs have satisfied the first

requirement imposed by this court's dismissal order. The second through fourth requirements

are interrelated and demand close analysis of the RICO statute and case law thereunder.

Section 1962(c) provides:

> It shall be unlawful for any person employed by or associated with
> any enterprise engaged in, or the activities of which affect,
> interstate or foreign commerce, to conduct or participate, directly
> or indirectly, in the conduct of such enterprise's affairs through a
> pattern of racketeering activity or collection of unlawful debt.

4

18 U.S.C. § 1962(c). "A violation of § 1962(c) . . . requires (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985) (footnote omitted). The requirements of § 1962(c) must be established as to *each* individual defendant. *De Falco v. Bernas*, 244 F.3d 286, 315 n.19 (2d Cir. 2000). For all of the reasons outlined below, Count III is dismissed as to Diamond, DePerte, and Kevin's Towing, but otherwise sustained.

### 1. *Racketeering activity*

"Racketeering activity" includes, among other things, any act or threat involving bribery or extortion that "is chargeable under State law and punishable by imprisonment for more than one year," and any act that is indictable under 18 U.S.C. § 1341 (mail fraud), § 1343 (wire fraud), or § 1951 (interference with commerce by threats or violence). 18 U.S.C. §§ 1961(1)(A), (B). Plaintiffs allege violations of each of these federal statutes. In addition, plaintiffs allege violations of the Illinois bribery and intimidation statutes. 720 ILCS 5/33-1 (West 1993) (bribery); *id.* 5/12-6(a)(6) (intimidation). The sentence of imprisonment for bribery, a class 2 felony under Illinois law, is between three and seven years. *Id.* 5/33-1(f); 730 ILCS 5/5-8-1(a)(5) (West 1997). The statutory minimum for intimidation is two years. 720 ILCS 5/12-6(b) (West 1993); 730 ILCS 5/5-8-1(a)(6) (West 1997); *accord* 720 ILCS 5/12-6(b) (Supp. 2002).[1] These

---

[1] The 1995 act raising the maximum sentence from five to ten years was held unconstitutional by the Illinois Supreme Court in *People v. Cervantes*, 723 N.E.2d 265 (Ill. 1999). The Illinois legislature reinstated the change effective April 13, 2000.

violations qualify as racketeering activity,[2] and each defendant is alleged to have committed at least one such violation.

## 2. *Pattern*

A "pattern" requires at least two acts of racketeering activity during a ten-year period. *See* 18 U.S.C. § 1961(5). In addition, a plaintiff "must show that the racketeering predicates are related, and that they amount to or pose a threat of continued criminal activity." *H.J., Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 239 (1989); *see also Selma*, 473 U.S. at 496 n.14 (describing these factors as "continuity plus relationship") (quoting S. Rep. No. 91-617, p. 158 (1969)). Continuity "is both a closed- and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition." *H.J., Inc.*, 492 U.S. at 241. "In order to demonstrate a pattern over a closed period, a RICO plaintiff must 'prove a series of related predicates extending over a substantial period of time.'" *Vicom, Inc. v. Harbridge Merchant Servs.*, 20 F.3d 771, 779 (7th Cir. 1994) (quoting *H.J., Inc.*, 492 U.S. at 242). The Seventh Circuit instructs that the closed-ended continuity determination should be informed by "the number and variety of predicate acts and the length of time over which they were committed, the number of victims, the presence of separate schemes and the occurrence of distinct injuries." *Vicom*, 20 F.3d at 780 (quoting *Morgan v. Bank of Waukegan*, 804 F.2d 970, 975 (7th Cir. 1986)). On the other hand, "[o]pen-ended continuity is

---

[2]One question is whether the alleged form of "intimidation," which involves a threat to unlawfully take or withhold action as a public official, constitutes "extortion" under 18 U.S.C. § 1961(1)(A). It almost certainly does. *See United States v. McNeal*, 77 F.3d 938, 942-43 (7th Cir. 1996) (acknowledging that prohibitions against extortion in the state of Illinois are found in the intimidation statute); *see also* 18 U.S.C. § 1951(b)(2) (defining the term "extortion" as "the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, *or under color of official right*") (emphasis added).

present when (1) 'a specific threat of repetition' exists, (2) 'the predicates are a regular way of conducting [an] ongoing legitimate business,' or (3) 'the predicates can be attributed to a defendant operating as part of a long-term association that exists for criminal purposes.'" *Vicom*, 20 F.3d at 782 (quoting *H.J., Inc.*, 492 U.S. at 242-43). Each defendant's activity must amount to a pattern of racketeering activity to be liable under § 1962(c). *De Falco*, 244 F.3d at 315 n.19.

Plaintiffs easily clear this hurdle with respect to Del Re. The first two acts of alleged wrongdoing qualify as racketeering activity. Plaintiffs allege that some time before February 13, 1998, Crichton, Del Re, and Johnson agreed that Johnson would make both ostensibly legal campaign contributions to the Citizens to elect Gary Del Re (the "Committee") and a cash payment directly to Del Re in exchange for towing area. Monies were paid by Johnson on February 13, 1998, at some time shortly prior to the April 1998 election primary, on June 10, 1998, and on August 26, 1999; the towing area was shifted to Johnson on April 12, 1999. Plaintiffs allege that Kevin DePerte, "at least a full year before" June 1999 (Am. Counts ¶ 41), also entered into an illegal agreement to purchase towing area. Pursuant to this agreement, Kevin's Towing contributed $2,000 to Del Re's election campaign on October 26, 1998. Only the filing of this lawsuit and consequent scrutiny of Del Re's actions, plaintiffs allege, prevented Del Re from completing the sale. The alleged Johnson and DePerte transactions, both involving Del Re, constitute two predicate acts within a ten-year period.

This leaves "continuity plus relationship." The relationship element is satisfied with respect to all defendants. All of the alleged wrongdoing in the complaint relates to the assignment of towing area in Lake County. On continuity, a preliminary question is whether the plaintiffs allege an open-ended or closed-ended pattern. Plaintiffs arguably have alleged facts

7

supporting either of the first two types of open-ended continuity. That the filing of this lawsuit allegedly thwarted the illegal transfer of territory to DePerte may indicate a "specific threat of repetition" of wrongdoing by Del Re. Alternatively, the allegations suggest that extortion, bribery, and fraud are "a regular way of conducting [the] ongoing legitimate business" of fund-raising by the Committee and of allocating towing territory by the Sheriff's Department. (Am. Counts ¶ 56 ("[T]he schemes were a regular . . . way the enterprises did business.").) As the individual principally in charge of fund-raising, Crichton arguably participated in this open-ended pattern. (Am. Counts ¶ 19.)

But even assuming that the predicate acts were focused exclusively on the 1998 election cycle, plaintiffs have sufficiently alleged closed-ended continuity, at least with respect to Del Re. The first alleged act of extortion culminated in a contribution on May 28, 1997; the last on September 29, 1999. Twenty-eight months is "a substantial period of time." *H.J., Inc.*, 492 U.S. at 242; *cf. Vicom*, 20 F.3d at 780-81 (holding insufficient a time span of less than nine months). The other *Morgan* factors also support a finding of continuity. Setting aside the allegations of fraudulent pre-election mailings and phone calls, which may or may not be pleaded with the particularity required by Fed. R. Civ. P. 9(b), plaintiffs allege 39 wrongful payments from all 13 towing operators, at least two instances of bribery, and a fraudulent territory modification letter sent by Del Re on April 12, 1999 to all 13 towing operators. The alleged acts of wrongdoing by Del Re include extortion, bribery, intimidation, and fraud, executed both in person and through the mail. The number and variety of predicate acts and the number of victims strongly suggest continuity. Plaintiffs also allege two distinct injuries—being intimidated into making campaign contributions and losing towing territory—and, at least arguably, two separate schemes—the

8

specific Johnson and DePerte money-for-territory transactions and a more generalized scheme of extortion, bribery, and fraud with respect to all 13 towing operators. One scheme or two, plaintiffs have sufficiently alleged a closed-ended pattern of racketeering activity, at least with respect to Del Re.

Stryker, Crichton, Johnson, and Auto Center apparently occupy the second tier of participation in racketeering activity. The allegations in the complaint satisfy the "pattern" requirement with respect to these defendants. "Beginning sometime prior to 1997," Johnson began attempting to illegally purchase towing area through Crichton. (Am. Counts ¶ 27.) According to plaintiffs, Del Re, Crichton, and Johnson (on behalf of Auto Center) reached an agreement prior to February 13, 1998, Crichton called Stryker to negotiate and close the deal,[3] Johnson personally delivered the secret payment shortly before the April 1998 election, and Auto Center made another installment payment on June 10, 1998. In addition, plaintiffs allege that Crichton mailed fraudulent campaign materials to towing operators and that Crichton and Johnson (on behalf of Auto Center, the court assumes) knowingly accompanied Del Re on his intimidating visits to certain operators. Thus, each of these defendants is alleged to have committed multiple predicate acts. As explained above, there is an argument that Crichton, as Del Re's principal fund-raiser, is instrumental in an on-going pattern of racketeering activity.

But even if their involvement has ended, Stryker, Crichton, Johnson, and Auto Center participated in varied racketeering activity for substantial periods of time inflicting as many as 40

---

[3]As an allegation of wire fraud, plaintiffs' statement that "Chrichton [sic] called Stryker to negotiate and close obtaining a towing territory for Johnson/Auto Center" (Am. Counts ¶ 53(e)(iii)) lacks sufficient particularity. Fed. R. Civ. P. 9(b). However, the allegation suffices to implicate Stryker in the Johnson transaction.

injuries on 12 or 13 different victims in two separate schemes. Assuming that the visits started just before the first contribution, May 28, 1997, and ended just before the primary in April 1998, and that Stryker was present on the first and last visits, his participation spanned eleven months. This duration is admittedly short for closed-ended continuity, *see, e.g., Vicom*, 20 F.3d at 780 (nine-month period insufficient); *J.D. Marshall Int'l v. Redstart, Inc.*, 935 F.2d 815, 821 (7th Cir. 1991) (thirteen-month period insufficient), but the relatively short duration here is overcome by the number of victims, the large number of distinct injuries, the variety of predicate acts, and the duality of schemes. Crichton was involved in the Johnson transaction prior to 1997 and made visits as late as April 1998, suggesting at least 15 months of racketeering activity. The complaint is ambiguous as to when Johnson began acting on behalf of Auto Center, as opposed to his former business, Max Johnson Motors, Inc. (Am. Counts ¶ 27.) For present purposes, the court assumes that the shift happened in 1996. This puts Johnson's and Auto Center's period of activity, ending with the June 10, 1998 bribery installment, at over 17 months. Plaintiffs have adequately pleaded a closed-ended pattern of racketeering activity with respect to these four defendants.

The next lower rung in the hierarchy of wrongdoing is occupied by defendants whose only activity was to accompany Del Re on his visits to towing operators. Herman, Wildwood, Kohlmeyer, and A-Tire fall into this category. The sufficiency of the pattern allegations with respect to these defendants is a very close question. Like Stryker, these defendants' alleged participation was at most 11 months. In contrast to Stryker's alleged misconduct, however, the variety of predicate acts and the multiplicity of schemes are lacking. These factors are not necessarily dispositive, but militate strongly against finding a RICO pattern. *Cf. Ashland Oil v.*

*Arnett*, 875 F.2d 1271, 1279 (7th Cir. 1989) (explaining that "it is an exception to the general rule to find a pattern within a single scheme"). Still, the potentially large numbers of distinct injuries and victims convinces this court to sustain the alleged pattern with respect to these defendants. *See Corley v. Rosewood Care Ctr.*, 142 F.3d 1041, 1050 (7th Cir. 1998) (holding that pattern element was sufficiently pleaded where single, closed-ended scheme "involved innumerable predicate acts of mail fraud occurring over a significant period of time [more than two years], and it was directed against a substantial number of victims, all of whom experienced distinct injuries"). Plaintiffs are warned that they will likely need more to survive summary judgment. *See Olive Can Co. v. Martin*, 906 F.2d 1147, 1151 (7th Cir. 1990) (finding no closed-ended continuity at summary judgment stage where single scheme of six-month duration involved six victims and a large number of predicate acts, but not of great variety).

This leaves Diamond, DePerte, and Kevin's Towing. Apart from an insufficiently pleaded allegation of wire fraud (Am. Counts ¶ 53(e)(iv)), their participation was limited to a single money-for-territory transaction. Plaintiffs fail to allege two predicate acts for any of these three defendants, so there is no pattern of racketeering activity. Count III is therefore dismissed with respect to Diamond, DePerte, and Kevin's Towing.

3. *Enterprise*

Next, a § 1962(c) claim requires an "enterprise," which is defined by statute as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). The Seventh Circuit has explained that "[a] RICO enterprise is an ongoing structure of persons associated through time, joined in purpose, and organized in a manner amenable to hierarchical or

11

consensual decision-making." *Richmond v. Nationwide Cassel L.P.*, 52 F.3d 640, 644 (7th Cir. 1995) (internal quotation marks omitted). Plaintiffs allege two different enterprises: (1) Citizens to elect Gary Del Re (the "Committee"), and (2) the Lake County Sheriff's Department (the "Department"). There is no question that a sheriff's office can qualify as a RICO enterprise. *United States v. Lee Stroller Enters.*, 652 F.2d 1313, 1319 (7th Cir. 1981) (en banc). So too the Committee, like other political organizations, *see, e.g., Rose v. Bartle*, 871 F.2d 331, 358-59 (3d Cir. 1989) (holding that county Republican party qualified as a RICO enterprise), exhibits the continuity and structure required to satisfy the "enterprise" element.

### 4. *Conduct*

In addition, plaintiffs must show that a "person employed by or associated with [an] enterprise . . . conduct[ed] or participate[d], directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." 18 U.S.C. § 1962(c). Seventh Circuit case law makes clear that "associated with" is broad enough to cover "even the smallest fish, those peripherally involved with the enterprise." *Schacht v. Brown*, 711 F.2d 1343, 1360 (7th Cir. 1983) (quoting *United States v. Elliott*, 571 F.2d 880, 903 (5th Cir. 1978)). The limiting principle here derives from the "conduct or participate . . . in the conduct" language, which requires that a defendant participate in the "operation or management" of the enterprise. *Reves v. Ernst & Young*, 507 U.S. 170, 179 (1993). While this test demands some modicum of control,

> an enterprise is "operated" not just by upper management but also by lower rung participants in the enterprise who are under the direction of upper management. An enterprise also might be "operated" or "managed" by others "associated with" the enterprise who exert control over it as, for example, by bribery.

*Id.* at 184 (footnote omitted).

12

According to the complaint, Del Re and Stryker are employed by the Department, and Del Re is the Chairman of the Committee. All of the other defendants are at least peripherally involved with the enterprises and therefore "associated with" them. *See United States v. Bright*, 630 F.2d 804, 830-31 (5th Cir. 1980) (bonding company paying kickbacks to sheriff's office in return for business is sufficiently "associated with" that office). The critical question is whether plaintiffs' allegations meet the "operation or management" test with respect to each defendant. Taking the allegations in the complaint as true, it is clear that Del Re was the top manager for both enterprises, that Stryker was at least a lower rung participant under his direction in the Department, and that both individuals participated in racketeering activity in these capacities. The allegation that Herman, on behalf of Wildwood, and Kohlmeyer, on behalf of A-Tire, accompanied the sheriff on his personal visits to towing operators knowing that the purpose of the visits was to extort campaign contributions is sufficient for present purposes to tie these four defendants to the operation of an enterprise.[4] Crichton is alleged to be the middle-man in and a party to the Johnson bribery transaction. That transaction establishes sufficient control over the enterprises by Crichton, Johnson, and Auto Center. *See Reves*, 507 U.S. at 184 ("An

_____

[4]Plaintiffs do not provide dates for these visits, alleging merely that they took place "[b]efore the 1998 primary election." (Am. Counts ¶ 50.) This defect is not fatal, notwithstanding this court's explicit instruction that plaintiffs should provide the date of occurrence for each predicate act. There is no general requirement under RICO that the exact date of each predicate act be specified in the pleading. *Cf. United States v. Glecier*, 923 F.2d 496, 500 (7th Cir. 1991) (holding that indictment provided sufficient notice of RICO charge without specifying exact dates). Knowing the date may be important in determining whether a plaintiff has sufficiently alleged a "pattern" of racketeering activity. In this case, however, the court has already found a pattern by making a favorable assumption as to the timing of these visits. The exact date may sometimes be essential to an allegation of fraud. Fed. R. Civ. P. 9(b); *Midwest Grinding Co. v. Spitz*, 976 F.2d 1016, 1020 (7th Cir. 1992). But here the visits are alleged to be acts of intimidation, not fraud, so no heightened pleading standard applies.

enterprise . . . might be 'operated' or 'managed' by [persons] 'associated with' the enterprise who exert control over it . . . by bribery.").[5] Thus, plaintiffs satisfy the "conduct" element with respect to each defendant.

## 5. *Causation*

Finally, plaintiffs' injuries must derive from the RICO violation. *See* 18 U.S.C. § 1964(c) ("Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court . . . ."). Accordingly, this court instructed plaintiffs to specify what they "rely on to show the requisite connection between the alleged RICO violation and the injury plaintiffs suffered." *Roger Whitmore's*, 2001 U.S. Dist. LEXIS 11104, at *8. As noted above, plaintiffs allege two types of injuries: (1) Whitmore's Auto's loss of towing area to Auto Center (Johnson's towing company) and Wildwood (Herman's); and (2) Whitmore's Auto's and Whitmore's campaign contributions. Plaintiffs complain that the contributions were induced through intimidation and extortion. (Am. Counts ¶¶ 51, 58.) The question becomes which defendants were involved in the relevant violations. Although the complaint does not specify which towing operators were visited by Del Re, Stryker, Herman, and Kohlmeyer (Am. Counts ¶ 50 ("certain tow operators")), the court will assume at this stage that plaintiffs were so visited. That would clearly connect these defendants, along with the two towing companies controlled by Herman and Kohlmeyer, Wildwood and A-Tire, to

---

[5]For the same reasons, the DePerte transaction would implicate Diamond, DePerte, and Kevin's Towing if plaintiffs had sufficiently alleged a pattern of racketeering activity.

plaintiffs' injuries.[6] Plaintiffs attribute the loss of towing area to Johnson's bribe, which was made on behalf of Auto Center and was facilitated by Crichton.[7]

B. Count I: Section 1962(a)

The amended counts clarify that the plaintiffs in Count I are Whitmore and Whitmore's Auto, and that the defendants are Del Re, Auto Center, Johnson, Wildwood, and Herman. Thus, plaintiffs have met the first requirement set in the court's prior order.

Section 1962(a) provides, in relevant part:

> It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity . . . to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

18 U.S.C. § 1962(a). Two related points of law are critical here. First, "the use or investment of the racketeering income must proximately cause the plaintiff's injury; injury caused by the predicate racketeering acts is inadequate." *Vicom*, 20 F.3d at 778 n.6 (describing this as the majority position); *Early v. K-Tel Int'l, Inc.*, No. 97 C 2318, 1999 U.S. Dist. LEXIS 4074, at *15 (N.D. Ill. Mar. 22, 1999) (adopting this position). Second, "mere reinvestment of the

---

[6]A more attenuated causal link would be that the visits to competitors and their resulting contributions put indirect pressure on plaintiffs to contribute.

[7]The absence of a causal link between the actions of Diamond, DePerte, and Kevin's Towing and plaintiffs' damages is a sufficient alternative basis for dismissing Count III as to these three defendants. How plaintiffs could have been hurt by the DePerte bribery transaction, in which one of their competitors paid a bribe but received no territory, is a mystery. Kevin's payment of $2,000 to Del Re on October 26, 1998 may have put indirect pressure on plaintiffs to contribute to retain their towing area, *see supra* note 6, but plaintiffs apparently did not succumb to such pressure—the last of plaintiffs' contributions was made on June 10, 1998.

racketeering proceeds into a business activity is not sufficient for § 1962(a) standing." *Vicom*, 20

F.3d at 778 n.6 (describing this as the majority position); *Palumbo v. I. M. Simon & Co.*, 701 F.

Supp. 1407, 1409-10 (N.D. Ill. 1988) (adopting this position).

Plaintiffs allege that Del Re received cash from Johnson and Auto Center and that he

invested that cash in his campaign. How that investment proximately caused harm to the

plaintiffs is unclear. The injury to plaintiffs from the Johnson money-for-territory transaction

was the loss of towing area (a component of the predicate act itself), not Del Re's use or

investment of the money. It is theoretically possible that Johnson's payment of $3,000-$4,000 to

Del Re made shortly before the April 1998 primary somehow helped Del Re to pressure

Whitmore's Auto into making its $250 contribution on June 10, 1998, but nothing in the

complaint supports this theory. Even if there were an allegation to this effect, the causal link

would be too tenuous to establish proximate cause. At most, this looks like the generalized

reinvestment of business income, which simply isn't enough. *See Palumbo*, 701 F. Supp. at

1409-10.

Plaintiffs' allegations concerning Auto Center, Johnson, Wildwood, and Herman are even

weaker. Plaintiffs do allege that these defendants received additional income from the modified

towing boundaries, but there is not the slightest suggestion that this income was used or invested

in any enterprise. For all the complaint avers, defendants put the money in Swiss bank accounts

or took vacations to the French Riviera. One might suppose that Auto Center's two post-

modification contributions were financed in part by the income generated from its expanded

towing area, but the only injuries alleged by plaintiffs *preceded* these contributions. Even if this

court believed that causation could run in reverse, the harm to plaintiffs would be caused by the predicate act of bribery, not the use or investment of racketeering income.

## C. Count II: Section 1962(b)

Plaintiffs once again comply with the court's first instruction by identifying the relevant plaintiffs, Whitmore and Whitmore's Auto, and defendants, Del Re and Stryker. To state a § 1962(b) claim, a plaintiff must allege, among other things, that he was injured by the defendant's acquisition or maintenance through racketeering activity of any interest in or control of an enterprise. 18 U.S.C. § 1962(b). "[I]n order to allege injury 'by reason of' section 1962(b), a RICO plaintiff must demonstrate that the defendants' acquisition or control of an interstate enterprise injured the plaintiff." *Midwest Grinding Co. v. Spitz*, 716 F. Supp. 1087, 1091 (N.D. Ill. 1989). Plaintiffs allege that Del Re's racketeering activity allowed him "to maintain his control over the Committee by generating income necessary for it to continue its work." (Am. Counts ¶ 65.) As the Committee's chairman, however, Del Re would have maintained control over the Committee no matter what. To be sure, the Committee may have been less effective without the racketeering income, but Del Re's control over it would not have been diminished. Plaintiffs also allege that the illegal fund-raising activities of Del Re and Stryker "increased [their] chances to remain in office." (*Id.*) Plaintiffs do not allege that the racketeering activity was a but-for cause of Del Re's reelection or, more fundamentally, the injury to plaintiffs. This fact alone is fatal to plaintiffs' claim. *Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258, 268 (1992) (holding that civil RICO claim requires "but-for" causation). But even assuming that Del Re would not have won reelection without the income from racketeering activity, plaintiffs' damages were proximately caused by prior and subsequent acts of racketeering, not by the mere

act of maintaining control. *Id.* (requiring proximate causation as well). The direct victims of Del Re's reelection, if any, were the Department and the residents of Lake County, not the plaintiffs. Count II is dismissed.

D. Count IV: Section 1962(d)

Subsection (d) of § 1962 makes it "unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section." To state a claim for conspiracy under § 1962(d), a plaintiff must allege that (1) the defendant agreed to use or invest racketeering income in an enterprise, or, through a pattern of racketeering activity, to acquire or maintain an interest in or control of an enterprise or to participate in the affairs of an enterprise, and (2) the defendant further agreed that, in furtherance of this goal, someone would commit at least two predicate acts constituting a pattern. *Slaney v. Int'l Amateur Ath. Fed'n*, 244 F.3d 580, 600 (7th Cir. 2001).

Plaintiffs Whitmore and Whitmore's Auto name all twelve defendants on this count: Del Re, Stryker, Crichton, Diamond, Johnson, Auto Center, Herman, Wildwood, DePerte, Kevin's Towing, Kohlmeyer, and A-Tire. Plaintiffs allege a conspiracy to violate all three subsections of § 1962. As explained above, however, plaintiffs' alleged RICO injuries derive exclusively from violations of subsection (c), so plaintiffs arguably have no cause of action for any alleged conspiracy to violate subsections (a) and (b). *See Beck v. Prupis*, 529 U.S. 494, 506 (2000) ("Although we express no view on this issue, arguably a plaintiff suing for a violation of § 1962(d) based on an agreement to violate § 1962(a) is required to allege injury from the 'use or investment' of illicit proceeds."). In any event, nothing in the complaint supports the view that any of the defendants agreed to use or invest racketeering income in any enterprise or to acquire

18

or maintain an interest in or control of an enterprise through racketeering activity. The viability of plaintiffs' conspiracy claim therefore hinges on their allegations that defendants conspired to violate § 1962(c).

Plaintiffs allege that Del Re, Stryker, Crichton, Johnson (presumably on behalf of Auto Center), Herman (on behalf of Wildwood), and Kohlmeyer (on behalf of A-Tire) personally visited multiple towing operators knowing that the purpose was to extort campaign contributions. This is sufficient to show that these defendants agreed to participate in the affairs of an enterprise through racketeering activity and, assuming each defendant went on more than one visit, further agreed that someone would commit two predicate acts. However, two predicate acts constitute a "pattern" only if they satisfy the continuity and relationship test. The visits to different towing operators were clearly related. As explained above, continuity is a very close question with respect to the actions of Herman, Wildwood, Kohlmeyer, and A-Tire. The sufficiency of the continuity allegations with respect to the conspiracy claim follows almost *a fortiori* from the sufficiency with respect to the substantive violation. For example, if any of these defendants participated in less than a pattern of racketeering activity, but knew that a pattern was contemplated, then plaintiffs may have a conspiracy claim against that defendant even though their § 1962(c) claim may ultimately fail. *See Beck*, 529 U.S. at 506-07 ("[A] plaintiff could, through a § 1964(c) suit for a violation of § 1962(d), sue co-conspirators who might not themselves have violated one of the substantive provisions of § 1962.").

Similar reasoning could apply to the claims against Diamond, DePerte, and Kevin's Towing. Although plaintiffs allege only one predicate act by each of these defendants, a conspiracy claim could survive if one of these defendants agreed that someone else should

19

commit two predicate acts constituting a pattern. Plaintiffs make no allegations supporting such an inference with respect to DePerte and Kevin's Towing,[8] so the conspiracy claim is dismissed as to these two defendants. On the other hand, plaintiffs allege that Diamond is a fund raiser for Del Re, that he assists in Del Re's political campaigns, and, most importantly, that he observed Johnson deliver a bribe to Del Re. (Am. Counts ¶¶ 20, 32.) The combination of these allegations is sufficient to support a finding that Diamond agreed to a pattern of racketeering activity, even though his alleged participation, standing alone, did not amount to a pattern.

E. Count V: Common Law Conspiracy

In order to state a claim for conspiracy, a plaintiff must allege (1) an agreement between two or more people to accomplish some unlawful purpose or some lawful purpose by unlawful means, and (2) at least one tortious act by one of the conspirators in furtherance of the agreement. *See Adcock v. Brakegate, Ltd.*, 645 N.E.2d 888, 894 (Ill. 1994). "An agreement to commit a wrongful act is not a tort, even if it might be a crime." *Id.* In other words, "the mere allegation of a conspiracy does not in and of itself constitute an allegation of wrongful acts upon which liability may be predicated." *Goetz v. Avildsen Tool & Machs.*, 403 N.E.2d 555, 562 (Ill. App. Ct. 1980).

Plaintiffs make clear that both of them wish to assert a common law conspiracy claim against all twelve named defendants. Besides identifying the relevant parties, plaintiffs' primary modification to Count V is to eliminate any reference to "fraud," presumably out of a desire to avoid the heightened pleading requirements of Rule 9(b). This elimination comes at a price—the

---

[8]The only other wrongdoing allegedly performed by DePerte and Kevin's Towing is interference with prospective business advantage, which does not qualify as racketeering activity under RICO. (Am. Compl. Count VI.)

court holds that plaintiffs have abandoned their claim for conspiracy to commit fraud. Plaintiffs now purport to ground Count V on "all of the predicate acts that were illegal and all other described actions that while legal, were taken for an improper purpose." (Am. Counts ¶ 69.) Neither illegality nor improper purpose are sufficient to support a civil conspiracy claim. *See Adcock*, 645 N.E.2d at 894 ("An agreement to commit a wrongful act is not a tort, even if it might be a crime."). Rather, what matters is that the underlying overt act be tortious. Plaintiffs provide no guidance as to which act they believe was tortious.

This court has uncovered no Illinois case law recognizing a general tort claim for extortion or bribery. *Cf. Chicago Park Dist. v. Kenroy, Inc.*, 402 N.E.2d 181, 186 (Ill. 1980) (allowing public entity to sue its official for breach of fiduciary duty by means of bribery and fraud).[9] The common law does not recognize either tort. *See* 31A Am. Jur. 2d, *Extortion, Blackmail, & Threats* § 1 n.1 (2001) ("Under the common law, extortion is a crime alone, and not a tort.") (citing *Myers v. Cohen*, 687 P.2d 6, 16 (Haw. Ct. App. 1984), *rev'd on other grounds*, 688 P.2d 1145 (Haw. 1984)); 12 Am. Jur. 2d, *Bribery* § 2 (2001) ("The general federal bribery statute, 18 USCA § 201, does not provide individuals with a private cause of action, nor does it serve to define a public officer's duty of care in a common-law tort case."). Thus, plaintiffs' allegations of extortion, intimidation, and bribery, standing alone, cannot support a common law conspiracy claim.

The only independent tort claim brought by plaintiffs is for interference with prospective business advantage. (Am. Compl. Count VI.)

---

[9]There is no suggestion that either plaintiff was the beneficiary of a fiduciary relationship.

21

> To state a cause of action for intentional interference with prospective economic advantage, a plaintiff must allege (1) a reasonable expectancy of entering into a valid business relationship, (2) the defendant's knowledge of the expectancy, (3) an intentional and unjustified interference by the defendant that induced or caused a breach or termination of the expectancy, and (4) damage to the plaintiff resulting from the defendant's interference.

*Anderson v. Vanden Dorpel*, 667 N.E.2d 1296, 1299 (Ill. 1996). Plaintiffs allege that they reasonably expected to maintain their towing relationship with the Lake County Sheriff. This is the only relevant business relationship in plaintiffs' many averments. With the exception of defendants Diamond, DePerte, and Kevin's Towing, plaintiffs do not allege that any of the defendants knew of this expectation. Nor do plaintiffs allege that the interference furthered an agreement to which any of the other defendants was a party. To the extent Count V alleges a conspiracy to interfere with prospective economic advantage, it is therefore dismissed with respect to all defendants except Diamond, DePerte, and Kevin's Towing.[10] The claim is sustained as to these three defendants because plaintiffs sufficiently allege all the elements of tortious interference and common law conspiracy.

## III. Conclusion

As explained above, plaintiffs' amendment to Counts I-V is allowed, Counts I and II are dismissed, Count III is dismissed with respect to Diamond, DePerte, and Kevin's Towing, Count IV is dismissed with respect to DePerte and Kevin's Towing, Count V is dismissed with respect

---

[10]As against Del Re this claim fails for the additional reason that a party to a relationship cannot tortiously interfere with the relationship. *See Quist v. Bd. of Trustees*, 629 N.E.2d 807, 811 (Ill. App. Ct. 1994) ("In order to maintain a cause of action for tortious interference with a contract or prospective contractual relationship, the tortfeasor must be a third party to the contractual relationship."). Recovery against Del Re must be in contract, not tort.

to all defendants except Diamond, DePerte, and Kevin's Towing, and defendants are instructed to answer or otherwise plead within 30 days of the entry of this order.

ENTER:

Joan B. Gottschall
United States District Judge

DATE:   May 8, 2002