Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Samuel Der-Yeghiayan | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 99 C 2504 | **DATE** | 3/31/2004 |
| **CASE TITLE** | Roger Whitmore's vs. Lake County | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]  For the reasons stated in the attached memorandum opinion, the Court hereby grants all defendants' motions for summary judgment in there entirety. All pending dates and motions are hereby stricken as moot. Terminating case. Enter Memorandum Opinion.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | |
| | No notices required. | number of notices | **Document Number** |
| | Notices mailed by judge's staff. | MAR 3 1 2004 | |
| | Notified counsel by telephone. | date docketed | 155 |
| ✓ | Docketing to mail notices. | docketing deputy initials | |
| | Mail AO 450 form. | | |
| | Copy to judge/magistrate judge. | | |
| MW | courtroom deputy's initials | date mailed notice | |

CLERK U.S. DISTRICT COURT
2004 MAR 31 PM 3: 27

Date/time received in central Clerk's Office                    mailing deputy initials

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| ROGER WHITMORE'S, AUTOMOTIVE SERVICES, INC., and ROGER WHITMORE, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 99 C 2504 |
| LAKE COUNTY, ILLINOIS, GARY DEL RE, GARY STRYKER, THOMAS CRICHTON, ALAN JACK DIAMOND, MAX JOHNSON, AUTO CENTER OF BEACH PARK, INC., WALLY HERMAN, WILDWOOD SERVICE, INC., KEVIN DEPERTE, KEVIN'S TOWING, INC., EDWARD KOHLMEYER, and A-TIRE, INC., | ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## <u>MEMORANDUM OPINION</u>

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Defendants' motions for summary judgment. For the reasons stated below, we grant all Defendants' motions for summary judgment in their entirety.

## BACKGROUND

This case has been pending before Judge Gottschall for several years and recently was reassigned to this court. Plaintiffs operate a towing business in Illinois. According to Plaintiffs, when the Lake County Sheriff's Office ("Sheriff's Office") needs a vehicle to be towed it follows one of two alternatives. If the operator of the vehicle requests a specific towing company then the Sheriff's office will call the requested company. Otherwise the Sheriff's office calls the towing company that is assigned by the County to cover the area where the vehicle is located. Plaintiffs allege that beginning in 1997 the Sheriff's Office began a scheme to raise money for the Sheriff's campaign for the 1998 Republican primary. According to Plaintiffs the incumbent Sheriff mailed out donation requests and made requests by phone. In addition officers allegedly visited businesses to solicit donations. According to Plaintiffs the Sheriff's Office made sure that only the towing companies that made contributions to the incumbent Sheriff's campaign received contracts from Lake County ("County") for a towing area. Plaintiffs contend that they did not contribute in 1997 to the incumbent Sheriff's campaign and instead supported his opponent. Defendant Gary Del Re was the incumbent Sheriff and Defendant Gary Stryker was the UnderSheriff. Plaintiffs claim that their towing contract area was reduced when the towing territory boundaries were reconfigured in 1998, fourteen months after they failed to contribute to the incumbent Sheriff's fund and supported the Sheriff's opponent. Plaintiffs' second amended version of Counts I through IV are brought

2

pursuant to 18 U.S.C. § 1962. Plaintiffs' second amended version of Count V is a common law conspiracy claim. On April 27, 2001 Judge Gottschall, the prior judge in this case dismissed all claims against Lake County and on February 19, 2004 we dismissed al claims against Edward Kohlmeyer. The remaining Defendants have filed summary judgment motions.

## LEGAL STANDARD

Summary judgment is appropriate when the record reveals that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In seeking a grant of summary judgment the moving party must identify "those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). This initial burden may be satisfied by presenting specific evidence on a particular issue or by pointing out "an absence of evidence to support the non-moving party's case."*Id.* at 325. Once the movant has met this burden, the non-moving party cannot simply rest on the allegations in the pleadings, but, "by affidavits or as otherwise provided for in [Rule 56], must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). A "genuine issue" in the context of a motion for summary judgment is not simply a "metaphysical doubt as to the material facts."

3

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp*, 475 U.S. 574, 586 (1986).

Rather, a genuine issue of material fact exists when "the evidence is such that a

reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty

Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Insolia v. Philip Morris, Inc.*, 216 F.3d 596,

599 (7th Cir. 2000). The court must consider the record as a whole, in a light most

favorable to the non-moving party, and draw all reasonable inferences that favor the

non-moving party. *Anderson*, 477 U.S. at 255; *Bay v. Cassens Transport Co.*, 212

F.3d 969, 972 (7th Cir. 2000).

## DISCUSSION

### I. Statutes at Issue

Plaintiffs have included a barrage of claims in their amended complaint and

their second amended version of Count I through V. We shall address identify and

discuss the claims below and then will address them more specifically as they

pertain to the remaining counts.

### A. RICO Claims

Plaintiffs have brought various RICO claims against Defendants pursuant to

18 U.S.C.A. § 1962 which states the following:

1962. Prohibited activities

(a) It shall be unlawful for any person who has received any income derived,
directly or indirectly, from a pattern of racketeering activity or through

4

collection of an unlawful debt in which such person has participated as a principal within the meaning of section 2, title 18, United States Code, to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce. A purchase of securities on the open market for purposes of investment, and without the intention of controlling or participating in the control of the issuer, or of assisting another to do so, shall not be unlawful under this subsection if the securities of the issuer held by the purchaser, the members of his immediate family, and his or their accomplices in any pattern or racketeering activity or the collection of an unlawful debt after such purchase do not amount in the aggregate to one percent of the outstanding securities of any one class, and do not confer, either in law or in fact, the power to elect one or more directors of the issuer.

**(b)** It shall be unlawful for any person through a pattern of racketeering activity or through collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

**(c)** It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

**(d)** It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section.

18 U.S.C.A. § 1962. As will be explained below there is insufficient evidence for a reasonable trier of fact to find that any of the Defendants violated 18 U.S.C.A. § 1962.

B. Hobbs Act Claims

Plaintiffs allege that the Hobbs Act, 18 U.S.C. § 1951 was violated by various

5

defendants. A plaintiff is required to show the existence of a quid pro quo for a Hobbs claim. *See McCormick v. U.S.*, 500 U.S. 257, 273-74 (1991)(stating that the court "disagree['s] with the Court of Appeals' holding in this case that a *quid pro quo* is not necessary for conviction under the Hobbs Act."); *U.S. v. Allen*, 10 F.3d 405, 411 (7th Cir. 1993)(stating that an express promise is required and that "[v]ague expectations of some future benefit should not be sufficient to make a payment a bribe."). It is not a violation of the Hobbs Act to give contributions to the campaign of a candidate. *Id.*(stating that "[t]o hold otherwise would open to prosecution not only conduct that has long been thought to be well within the law but also conduct that in a very real sense is unavoidable so long as election campaigns are financed by private contributions or expenditures, as they have been from the beginning of the Nation."). There is no evidence that any Defendants in this case made contributions to Del Re's campaign because they were induced by "force, violence, or fear" as mentioned in *McCormick. Id.* Plaintiffs' case is built upon conjecture and speculation and we find that there is insufficient evidence for a reasonable trier of fact to conclude that any of the defendants violated the Hobbs Act.


## C. Illinois Acts and Mail Fraud

Plaintiffs allege that the Defendants violated the Illinois Intimidation Act which states the following regarding bribery:

A person commits bribery when:
(a) With intent to influence the performance of any act related to the

6

employment or function of any public officer, public employee, juror or witness, he promises or tenders to that person any property or personal advantage which he is not authorized by law to accept; or

(b) With intent to influence the performance of any act related to the employment or function of any public officer, public employee, juror or witness, he promises or tenders to one whom he believes to be a public officer, public employee, juror or witness, any property or personal advantage which a public officer, public employee, juror or witness would not be authorized by law to accept; or

(c) With intent to cause any person to influence the performance of any act related to the employment or function of any public officer, public employee, juror or witness, he promises or tenders to that person any property or personal advantage which he is not authorized by law to accept; or

(d) He receives, retains or agrees to accept any property or personal advantage which he is not authorized by law to accept knowing that such property or personal advantage was promised or tendered with intent to cause him to influence the performance of any act related to the employment or function of any public officer, public employee, juror or witness; or

(e) He solicits, receives, retains, or agrees to accept any property or personal advantage pursuant to an understanding that he shall improperly influence or attempt to influence the performance of any act related to the employment or function of any public officer, public employee, juror or witness.

(f) Sentence.

720 ILCS 5/33-1. In this case Plaintiffs have failed to point to sufficient evidence for a reasonable trier of fact to conclude that any Defendant gave money to Del Re's campaign in exchange for a promise of official action by Del Re. There is nothing other than Plaintiffs' unsubstantiated allegations to support the charges of bribery against any of the Defendants. In regards to intimidation the Act states the following:

Intimidation.

(a) A person commits intimidation when, with intent to cause another to perform or to omit the performance of any act, he communicates to another, whether in person, by telephone or by mail, a threat to perform without lawful authority any of the following acts:

(1) Inflict physical harm on the person threatened or any other person or on property; or

(2) Subject any person to physical confinement or restraint; or

(3) Commit any criminal offense; or

(4) Accuse any person of an offense; or

(5) Expose any person to hatred, contempt or ridicule; or

(6) Take action as a public official against anyone or anything, or withhold official action, or cause such action or withholding; or

(7) Bring about or continue a strike, boycott or other collective action.

(b) Sentence.

720 ILCS 5/12-6. In this case there is insufficient evidence for a reasonable trier of fact to conclude that any of the Defendants engaged in conduct or participated in a conspiracy aimed at conduct that constituted a threat or could be deemed a threat by a reasonable person, to intimidate parties to make contributions to Del Re's campaign. Plaintiffs argue that it is not true that if "the local Sheriff, who has material control [over] one's financial destiny, appears and demands money that there can be no intimidation." This illustrates the fictional nature of Plaintiffs' claims. Plaintiffs have offered no evidence that Del Re or anyone acting on behalf of Del Re demanded money from anyone. Yet Plaintiffs continue to offer forth these unsubstantiated theories. Plaintiff Roger Whitmore stated at his deposition that he felt intimidated when people from the Sheriff's Office came in and stood there in

8

uniforms with guns and badges. ( R SF 40). However, that is not a reasonable reaction by a business owner simply because an officer enters the business. We further find the Plaintiffs' alleged reaction to be ludicrous inasmuch as Plaintiffs admit that Sheriffs and Sheriff's officers for many years had visited their establishment.

Plaintiffs also allege that Defendants violated the mail fraud statutes, 18 U.S.C. § 1341, 18 U.S.C. § 1343. However, as with the other claims Plaintiffs have utterly failed in their effort to point to any evidence upon which a reasonable trier of fact could find in their favor.

## II. Defendants Del Re and Stryker

Defendants Gary Del Re ("Del Re") and Gary Stryker ("Stryker") have moved for summary judgment on several counts against them which consist of Counts III and IV of the second amended complaint against Del Re and Stryker and Counts VII and VIII against Del Re.

### A. Constitutional Claims (Count VII, VIII)

A municipal entity "may not condition public employment on an employee's exercise of his or her First Amendment rights." *O'Hare Truck Serv., Inc. v. City of Northlake*, 518 U.S. 712, 717 (1996). This rule applies to the hiring of independent contractors by a municipal entity to perform municipal services. *Id.* at 721-23. In

order to prevail on a First Amendment retaliation claim "an employee must prove that the conduct at issue was constitutionally protected, and that it was a substantial or motivating factor in the termination." *Board of County Com'rs, Wabaunsee County, Kan. v. Umbehr*, 518 U.S. 668, 675 (1996); *Mount Healthy City School Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977). If the employee meets that burden the municipal entity must then show that "it would have taken the same action even in the absence of the protected conduct." *Umbehr*, 518 U.S. at 675.

In this case Plaintiffs bases their claims of retaliation on the fact that their towing area was reduced during their contract in the year that they first supported an opponent of the incumbent Sheriff. ( R SF 141). Such is insufficient evidence to show unlawful retaliation. We note that the fact that Plaintiffs retained a towing area at all is inconsistent with their assertion that there was a conspiracy against them because they did not support Del Re. If Del Re wanted to punish Plaintiffs he could have taken away their entire towing area. In fact Plaintiffs admit that even after the re-configuration of his towing territory, Plaintiff Roger Whitmore's ("Whitmore") earnings from towing for the Lake County Sheriff's department has averaged $54,000 per year between 1999 and 2003. Such income hardly suggests that there was retribution taken against him because he did not make a $250 contribution to Del Re's campaign.

Whitmore admits that the Sheriff's opponent Willie Smith, "would be more accessible to him and accessibility would be beneficial from a business point of

10

view." ( R SF 97). Whitmore admits that he understood this to mean that if he donated funds Smith would divide up the towing territories to give Whitmore more towing territory. ( R SF 97, 100). Whitmore admits this fact statement of fact number 100. He tries to qualify his answer by including some related citations to the record, but such evasive measures are not sufficient to constitute a denial under Local Rule 56.1 and thus he admits to the truth of fact number 100. If he wanted to deny the point he was obligated to do so unreservedly. *See Jankovich v. Exelon Corp.*, 2003 WL 260714, at *5 (N.D.Ill. 2003)(indicating that evasive denials, that fail to directly oppose a statement of fact, are improper and thus the contested fact is deemed to be admitted pursuant to Local Rule 56.1). Thus, Whitmore admits that he himself was contributing to the Sheriff's opponent hoping to get beneficial treatment by the newly elected Sheriff and thus benefitting from the same type of alleged unlawful patronage that he alleges harmed him.

There is ample evidence that indicates that the reconfiguration of Plaintiffs' towing area was not done because of illegitimate or unlawful reasons. We shall provide some examples of such evidence. Plaintiffs admit pursuant to Local Rule 56.1 that Plaintiff Roger Whitmore's brother Randy Whitmore donated money to the campaign of the Sheriff's opponent and that in the revision of towing boundaries in 1999 Randy Whitmore only lost one intersection from his towing area. ( R SF 93, 149). Plaintiffs admit that Ernie's Wrecker Service ("Ernie's") donated money to the campaign of the Sheriff's opponent and that as a result of the revision of towing

boundaries Ernie's actually gained territory. ( R SF 95, 145). Plaintiffs admit that Defendant A-Tire donated money to the campaign of the opponent of the Sheriff, but Plaintiffs are unaware as to whether A-Tire suffered any retaliation. ( R SF 94, 143-44). Plaintiffs also fail to offer evidence explaining why the Sheriff's Office would wait fourteen months after the alleged protected conduct to retaliate against Plaintiffs.

Plaintiffs complain that the Sheriff's office does not have written guidelines for picking towing companies and complains because the Sheriff's office did not order studies to better determine how to pick companies. However, Plaintiffs have failed to show that written guidelines were necessary. A reasonable trier of fact cannot simply conclude that since there were no written guidelines the towing contacts were handed out in a completely arbitrary fashion in exchange for bribes. Plaintiff must have more evidence, but they do not. Plaintiffs claim that a tower got a contract if Del Re approved it, but Plaintiffs fail to offer any evidence to show that Del Re did not make his determinations according to legitimate criteria. Plaintiffs also complain about lack of a study "on how to go about picking towing companies." Del Re apparently did not think a study necessary and Plaintiffs have not shown otherwise. In fact we commend the Sheriff for demonstrating fiscal responsibility by employing the funds to serve and protect the community instead of spending funds on unnecessary studies to satisfy litigious towing companies. The Sheriff has a responsibility to make decisions to further the public safety and as stated in the

preamble of his letter to towing companies he made the necessary reconfiguration to the towing territories in order to "maintain organizational efficiency as it relates to the towing area coverage." Thus, Plaintiffs have failed to show that the alleged wrongful intent was a substantial factor in the decision to reduce Plaintiff's towing area.

Plaintiffs improperly argue in their answer to the instant motions that the County can be held liable for Del Re's conduct under the doctrine of respondeat superior. This argument ignores the well-established rule that the doctrine of respondeat superior is not applicable for Section 1983 claims. *Monell v. Department of Social Services*, 436 U.S. 658, 691 (1978). Under Illinois law a County is a local public entity and can only be held liable to a third party for the acts of its employees create liability. 745 ILCS 10/2-109. In the first instance Plaintiffs have failed to establish that the acts of Sheriff Del Re were unlawful. Secondly, for purposes of the doctrine of respondeat superior under Illinois law the Sheriff is considered a County officer rather than a County employee and thus the County cannot be held liable for his actions under the doctrine. *Moy v. County of Cook*, 640 N.E.2d 926 (1994); *See also Ryan v. County of DuPage*, 45 F.3d 1090, 1092 (7th Cir. 1995)(stating that a county cannot be held liable for acts of Sheriff under Section 1983). Since Sheriffs in Illinois are independently elected officials and are not subject to control by the counties, a suit against a Sheriff in his official capacity is a suit against the office of the Sheriff rather than a suit against the county he serves.

*Franklin v. Zaruba*, 150 F.3d 682, 685-86 (7th Cir. 1998); *Thompson v. Duke*, 882 F.2d 1180, 1187 (7th Cir. 1989). In addition, Plaintiffs have not provided sufficient evidence for a reasonable trier of fact to conclude that there was any violation of the Illinois constitution by Del Re or any of the Defendants.

We also note that the remaining claims against Del Re are claims against him in his individual capacity. Del Re contends that he is entitled to qualified immunity. In determining whether a public official is protected by qualified immunity, a court must "determine whether [the plaintiff] has asserted a violation of a constitutional right, and . . . whether that right was 'clearly established' at the time it was violated." *Manning v. Miller*, 355 F.3d 1028, 1034 (7th Cir. 2004). As indicated above, there is no evidence of a constitutional violation and Del Re is entitled to qualified immunity. Therefore, we grant Del Re's motion for summary judgment on Counts VII and VIII.


### B. RICO Claims (Counts III and IV)

Plaintiffs bring Count III pursuant to 18 U.S.C. § 1962(c) and Count IV pursuant to 18 U.S.C. § 1962(d). For a § 1962(c) claim a plaintiff must establish: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Goren v. New Vision Intern., Inc.*, 156 F.3d 721, 727 (7th Cir. 1998). To establish a "pattern of racketeering activity" a plaintiff must establish at least "two predicate acts of racketeering committed within a ten-year time period." *Id.*(stating that "[t]he

predicate acts are violations of a specified list of criminal laws."). The Seventh Circuit has cautioned courts not to broadly construe the RICO conspiracy section so as "to criminalize mere association with an enterprise." *Id.*

In order to establish a violation of 18 U.S.C. § 1962(d), a plaintiff must show that the defendant "violated another provision of the statute . . .[such as] subsection (c) and that the defendant had "some degree of management or control over the RICO enterprise." *Brouwer v. Raffensperger, Hughes & Co*, 199 F.3d 961, 965 (7th Cir. 2000). The agreement must be made knowingly by the defendant. *Id.* at 967.

Plaintiffs contend that Del Re and Stryker engaged in a "pattern of racketeering activity" when they sought contributions for Del Re's 1998 primary and general election. Plaintiffs claim that Del Re and Stryker used intimidation and bribery to obtain donations. Illinois law expressly states that candidates are allowed to raise funds for their campaign by selling tickets to fund-raising events. 10 ILCS 5/9-1.4(2). Plaintiffs have not pointed to an unlawful promise from the Del Re although as indicated above they admit to receiving such an unlawful promise from the Sheriff's opponent. A campaign contribution is the product of intimidation under Illinois law if it is the result of a threat of official action or inaction without lawful authority. 720 ILCS 5/12-6(a)(6). Plaintiffs fail to point to sufficient evidence for a reasonable trier of fact to find intimidation. Plaintiffs' contentions that they were intimidated by a few phone call solicitations and mail solicitations are beyond the pale of a reasonable reaction to such communications.

15

Plaintiffs also claim that when former Sheriff's Brown, Babcox, and Grinnel came to their shop to sell tickets Plaintiffs bought tickets because they felt intimidated. Plaintiffs assert in their answer to the instant motions that "[a] reasonable jury could find that the Sheriff's Department had been intimidating towing operators into giving contributions even before the Del Re administration." (Ans. 19). Plaintiffs also go into detail about alleged retaliation against Ernie's Wreckers "in an administration prior to Del Re." (Ans. 21). These examples are yet another illustration of the lack of evidence to support Plaintiffs' case. In order to try and substantiate their case Plaintiffs make allegations concerning irrelevant circumstances that occurred years ago with former Sheriffs. Furthermore, absent incriminating evidence a reasonable person would not be intimidated merely because a law enforcement officer stopped by his store selling tickets. A public official is guilty of bribery under Illinois law only if he accepts contributions he is not authorized to accept, knowing that it is intended to influence the performance of his official duties. 720 ILCS 5/33-1. Plaintiffs have presented no evidence of bribery to Del Re or Stryker. Plaintiffs fail to show that the allegations against Defendants are in any way related and fail to show that they meet the requirements of the "continuity plus relationship" test laid out in *H.J. Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 239 (1989). Therefore, we grant Del Re's and Stryker's motion for summary judgment on Counts III and IV.

III. Jack Diamond

Pursuant to Judge Gottschall's ruling on May 8, 2002 several counts remain against Defendant Jack Diamond. Plaintiffs allege a RICO conspiracy claim against Diamond in Count IV pursuant to 18 U.S.C. § 1962(d), a common law conspiracy to intentionally interfere with Plaintiffs' prospective business advantage in Count V, and a common law claim for intentional interference with Plaintiffs' prospective business advantage in Count VI.

### A. RICO Claim (Count IV)

The RICO conspiracy claim, 18 U.S.C. § 1962(d), against Diamond is based upon Diamond's alleged actions as a fund-raiser for Del Re and the allegations that Diamond observed someone deliver an envelope to Del Re. There is evidence that indicates that the envelope given to Del Re contained a donation from Defendant Max Johnson, but any further conjecture is pure speculation. Although, Judge Gotschall allowed the claim to stand at the motion to dismiss stage where allegations are sufficient, Plaintiffs have failed to come forth with admissible evidence to show that the alleged envelope constituted a bribe. The record is absolutely devoid of any evidence showing that there was any such agreement between Diamond and Del Re. Diamond admits that he spoke to Nick Gountanis and asked Gountanis to speak to Del Re about getting some towing business for Defendant Kevin Deperte. However, there is no evidence of any improper agreement between Diamond and Del Re that

17

would support the RICO conspiracy claim against Diamond. There is clearly insufficient evidence for a reasonable jury to find that a RICO claim was established against Diamond. Plaintiffs are not entitled to go before a jury and ask the jury to base their finding on what they imagined occurred behind the scenes absent proof to support such conclusions. Therefore, we grant Diamond's motion for summary judgment on the RICO claim.

### B. Intentional Interference With Prospective Business Advantage (Count VI)

For a claim of intentional interference with prospective economic advantage, a plaintiff must show: "(1) a reasonable expectancy of entering into a valid business relationship, (2) the defendant's knowledge of the expectancy, (3) an intentional and unjustified interference by the defendant that induced or caused a breach or termination of the expectancy, and (4) damage to the plaintiff resulting from the defendant's interference." *Anderson v. Vanden Dorpel*, 667 N.E.2d 1296, 1299 (Ill. 1996).

Again Plaintiffs have failed to come forth with any evidence to show that Diamond acted unlawfully. Plaintiffs had no right to obtain a towing contract and had no reasonable expectation that they would retain a towing contract under the new territory boundaries. There is no evidence that Diamond interfered with the prospective contract opportunities for Plaintiffs. Plaintiffs have not pointed to evidence that would lead a reasonable trier of fact to conclude that Diamond played

any role in the Sheriff's decision to reconfigure Plaintiffs' towing area. Even if Plaintiffs had pointed to such evidence there is no evidence that any such guidance was given by Diamond with an unlawful intention. Therefore, we grant Diamond's motion for summary judgment on the intentional interference with prospective economic advantage claim.

### C. Interference Conspiracy (Count V)

The Supreme Court of Illinois has defined a civil conspiracy as "a combination of two or more persons for the purpose of accomplishing by concerted action either an unlawful purpose or a lawful purpose by unlawful means." *McClure v. Owens Corning Fiberglas Corp.*, 720 N.E.2d 242, 258 (Ill. 1999)(quoting *Buckner v. Atlantic Plant Maintenance, Inc.*, 694 N.E.2d 565 (1998)). For a civil conspiracy claim a plaintiff must show that there was "an agreement and a tortious act committed in furtherance of that agreement." *Id.* (explaining that "[t]he civil conspiracy theory has the effect of extending liability for a tortious act beyond the active tortfeasor to individuals who have not acted but have only planned, assisted, or encouraged the act."). For a civil conspiracy claim a plaintiff must establish that the defendant "knowingly and voluntarily participate[d] in a common scheme to commit an unlawful act or a lawful act in an unlawful manner.")(quoting *Adcock v. Brakegate, Ltd.*, 645 N.E.2d 888, 888 (Ill. 1994).

As indicated above in this case Plaintiffs have failed to point to sufficient

19

evidence for a reasonable trier of fact to conclude that an underlying tortious conduct occurred. Neither have Plaintiffs pointed to sufficient evidence for a reasonable trier of fact to conclude that Diamond made any agreement to further such a purpose. Therefore, we grant Diamond's motion for summary judgment on the conspiracy to intentionally interfere with prospective economic advantage claim.

## IV. Kevin DePerte and Kevin's Towing, Inc.

There are several remaining Counts against Defendant Kevin Deperte ("Deperte") and Kevin's Towing, Inc. ("Kevin's"). They include the common law conspiracy claim (Count V), and the intentional interference with prospective business advantage (Count VI). Deperte admits that he spoke to Defendant Diamond, Nick Gountanis, and George Gountanis to see if they could tell him how to get a towing contract. There is no evidence that any of the three or Del Re made an agreement with Deperte that he would get a towing area if he made contributions to Del Re's campaign. Deperte made contributions to Del Re's campaign which his First Amendment rights allowed him to do. There is not sufficient evidence for a reasonable trier of fact to conclude that Deperte in any way interfered with Plaintiffs' prospective contractual opportunities. Therefore, we grant Deperte's and Kevin's motion for summary judgment on the intentional interference with prospective business advantage claim.

In regards to the civil conspiracy claim, there is no evidence of an agreement

between Deperte and Del Re. Plaintiffs seek to infer that Deperte gave bribes to Del Re simply because he decided to contribute to his campaign. Such an inference is based upon unsubstantiated speculation. In addition the evidence that Plaintiffs use to support their speculation is in large part inadmissible. Therefore, we grant Deperte's and Kevin's motion for summary judgment on the common law conspiracy claim.

## V. Wally Herman, Wildwood Services, Inc., A-Tire, Max Johnson, Auto Center

There are a few remaining Counts against Defendants Wally Herman ("Herman"), Wildwood Services, Inc., A-Tire, Max Johnson ("Johnson"), and Auto Center. Count III alleges a claim pursuant to 18 U.S.C. § 1962(c). Count IV alleges a claim pursuant to 18 U.S.C. § 1962(d). Plaintiffs claim that Herman accompanied Del Re on one political campaign trip to some businesses in Lake County, that Herman raised money for Del Re's campaign, and that Herman himself donated money to the campaign. Herman had a right to do all of the above. Plaintiffs' assertion that Herman took the actions because of a promise by Del Re of preferential treatment or because of a threat are utter speculation.

In regards to Defendant Johnson, Johnson readily admits that he contributed to Del Re's campaign. According to Crichton, he had spoken to Johnson several times gong back to the Grinnell administration on how to go about applying for a towing contract and that Crichton had told Johnson to fill out the appropriate paperwork. If

Johnson was seeking a towing area from the Sheriffs office at that time of Del Re's campaign, absent additional facts, no reasonable jury could find that Johnson's donation was made in exchange for a promise of preferential treatment by Del Re. Johnson correctly points out that Plaintiffs themselves admit to giving funds to Del Re's opponent. Yet a reasonable trier of fact could not conclude based on that fact alone that Plaintiffs made an unlawful agreement and that the donation was a bribe to Del Re's opponent. Plaintiffs' assertion that Johnson's business was not up to code for County towing contracts is unsubstantiated. Plaintiffs try to make much of the alleged days on which the Sheriff inspected Johnson's business. These arguments only serve to illustrate the baseless conspiratorial nature of Plaintiffs' claims as they follow the steps of the Sheriff's Office and theorize why the Sheriff's Office inspected on one day instead of another day. Plaintiffs completely fail to supply any evidence to support their web of intrigue that they make out of innocuous facts.

In regards to the deposition testimony of George Gountanis ("Gountanis") as it pertains to any of the Defendants, the testimony only serves to illustrate how few specific facts Gountanis knew about the pertinent actions and how little he remembered about the past events, and his testimony does not create a genuine issue of material fact in regards to any of the claims. The arguments stated above in regards to RICO claims against the other defendants are equally applicable to the claims against Herman, Wildwood Services, Inc., A-Tire, Max Johnson, and Auto

Center. The Defendants had the right to support the candidate of their choice and Plaintiffs cannot create a triable issue by attempting to criminalize Defendant's conduct by espousing innuendo and rumor. Therefore, we grant the motions for summary judgment by Herman, Wildwood Services, Inc., A-Tire, Max Johnson and Auto Center on all remaining claims.

## VI. Thomas Crichton

There are a few remaining Counts against Defendant Thomas Crichton ("Crichton"). Count III alleges a claim pursuant to 18 U.S.C. § 1962(c). Count IV alleges a claim pursuant to 18 U.S.C. § 1962(d). Plaintiffs claim that Crichton called Stryker on the phone. However, Plaintiffs' unsubstantiated allegation in the complaint is not sufficient to create a triable issue, particularly when Crichton has submitted his own affidavit indicating that he did not call Stryker. Plaintiffs claim that Crichton accompanied Del Re on some visits to towing companies. However, there is no evidence that Crichton or Del Re engaged in any behavior that could be deemed intimidation by a reasonable trier of fact. Crichton claims that he accompanied the Sheriff in order to introduce the Sheriff to the business owners during the Sheriff's campaign. The reason that Crichton's gives is completely lawful and legitimate and Plaintiffs have not pointed to evidence sufficient for a reasonable trier of fact to conclude that Crichton participated in any unlawful activity on those visits. Once again Plaintiffs, in the absence of evidence to support their case, would

have the court speculate as to what really occurred during the visits. As with the claims against the other defendants there is no evidence that Crichton participated in any conspiracy and no evidence that he ever made an explicit agreement with Del Re that Del Re would take official action or refuse to take official action if Crichton contributed to his campaign. Plaintiffs argue that "the Sheriff needed money," "Crichton acted as a fund-raiser for Del Re's primary and general election," and that a "reasonable jury can easily find that there is a direct link between the money-raising and the towing-giving." (Ans. 8). This argument epitomizes Plaintiffs' case. It is completely without merit and it is not the law. An individual is entitled to give to or work for the political campaign of his or her choice and a reasonable jury cannot engage in the type of speculation that Plaintiffs suggest. Plaintiffs further compound their inaccurate depiction of the law when they allege that Crichton succeeded in getting a towing contract for Johnson and Plaintiffs argue that "[t]his fact standing alone entitles the Plaintiffs to a trial." (Ans. 8). However, that is not the law.

Plaintiffs also accuse Crichton of mail fraud in violation of 18 U.S.C. § 1341. Plaintiffs accuse Crichton of mailing out fund-raising tickets for Del Re. Crichton denies that he did so and Plaintiffs have not provided evidence to substantiate their claim. Crichton was not employed by the Sheriff's Department or the Committees to Elect Gary Del Re. Therefore, we grant summary judgment on all claims against Crichton. In addition, we find that Plaintiffs have failed to provide sufficient

24

evidence for a reasonable trier fo fact to find in Plaintiffs' favor on any of the mail fraud claims against any of the Defendants.

## CONCLUSION

Plaintiffs succeeded after several attempts at amending their complaints, before the prior judge, to allege claims and avoid a dismissal because the court was required to accept their allegations as true. We are now at the summary judgment stage, and, after discovery, Plaintiffs have nothing to show other than a collection of loosely connected facts that Plaintiffs attempt to spin into a tale of intrigue. Plaintiffs would like this court to believe that there is a vast conspiracy to deny them more towing opportunities, but have not provided any credible evidence other than a scenario based upon their imagination which is worthy of a novel. However, we are not here to address tales of fiction. To proceed onward past summary judgment to trial, Plaintiffs must show that there is some admissible evidence that they can present to a reasonable trier of fact that would enable them to find in Plaintiffs' favor. Plaintiffs have utterly failed in their endeavors and we grant all of Defendants' motions for summary judgment in their entirety. Plaintiffs are apparently disgruntled because they were not given a towing area of their liking. In theory, the Sheriff's Office might expect similar "knee-jerk" groundless suits from

each and every towing company that does not get a towing area of their liking. However, hopefully sounder minds will prevail and this will be the end of such baseless litigation. This case is hereby terminated.

Samuel Der-Yeghiayan
United States District Court Judge

Dated: March 31, 2004